# EXHIBIT A

## AMENDED AND RESTATED
## CONTINUING GUARANTY
### (Carl Blauwkamp)

1.　　Promise to Pay.　For value received, the undersigned hereby absolutely and unconditionally guarantees to FIFTH THIRD BANK, an Ohio banking corporation, successor by merger to Fifth Third Bank, a Michigan banking corporation (the "Lender"), the full and prompt payment or performance of the following in accordance with the terms of this Guaranty: any and all indebtedness, obligations, promises, debts and liabilities of every kind and nature of LAMAR CONSTRUCTION COMPANY (the "Debtor") to Lender however evidenced, whether now existing or hereafter created or arising, whether direct or indirect, absolute or contingent, joint or several and however owned, held or acquired by Lender, whether through discount, overdraft, purchase, direct loan or as collateral or otherwise and any and all indebtedness, obligations or liabilities for which Debtor would otherwise be liable to Lender were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason (hereinafter collectively the "Indebtedness").　The undersigned also agrees to pay all costs and expenses including, but not limited to, reasonable attorney's fees incurred by Lender in endeavoring to collect the Indebtedness or any part thereof and in enforcing this Guaranty or realizing upon any collateral for the Indebtedness or this Guaranty (including participating or taking action in any bankruptcy or other insolvency proceeding of the Debtor or the undersigned).

2.　　Extent of Liability.　If the Debtor fails to pay all or any part of the Indebtedness when due, whether by default or maturity, the undersigned immediately upon the demand of Lender will pay to Lender the amount due and unpaid by the Debtor as if such amount constituted the direct and primary obligation of the undersigned. The Bank shall not be required prior to any such demand or on payment by the undersigned to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or any other person obligated with respect to the Indebtedness ("Obligor") or to pursue or exhaust any of its rights or remedies with respect to any collateral for the Indebtedness or this Guaranty. Upon the death, incompetency, dissolution, liquidation or insolvency (however evidenced) of the Debtor, or the institution of bankruptcy or receivership proceedings against or by the Debtor, all of the Indebtedness then existing shall, at the option of Lender and without notice to the Debtor or the undersigned, immediately become due and payable by the undersigned. The Bank may enforce this Guaranty against the undersigned without any obligation to resort to the Debtor for the payment or to any other guarantor or any collateral, security, liens or other rights or remedies of Lender. This is a continuing guaranty of payment and not of collection and remains effective whether the Indebtedness is from time to time reduced and later increased or entirely extinguished and later reincurred.　The undersigned delivers this Guaranty based solely on the undersigned's independent investigation of (or decision not to investigate) the financial condition of the Debtor and is not relying on any information furnished by Lender.　The undersigned assumes full responsibility for obtaining any further information concerning the Debtor's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate now or later. The undersigned knowingly accepts the full range of risk encompassed in this Guaranty, which risk includes, without limit, the possibility that the Debtor may incur Indebtedness to Lender after the financial condition of the Debtor, or the Debtor's ability to pay debts as they mature, has deteriorated.

The undersigned agrees to pay the Indebtedness to Lender in accordance with the terms of each instrument and document evidencing the Indebtedness regardless of whether such terms are held to be unenforceable, void or of no effect against the Debtor or any other Obligor. Without limiting the generality of the foregoing, the undersigned will not assert, plead or enforce against Lender any defense of waiver, release, discharge in bankruptcy, statute of limitations, *res judicata*, statute of frauds, anti-deficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability that may be available to the Debtor or any other Obligor, or any setoff available to the Debtor or any other Obligor against Lender, whether or not on account of a related transaction. The undersigned shall be liable for any deficiency remaining after foreclosure of or realization upon any security for all or part of the Indebtedness, whether or not the liability of the Debtor or any other Obligor for the deficiency is discharged pursuant to statute, judicial decision or otherwise.

      3.    <u>Waivers and Powers of Lender</u>. The undersigned waives: (i) and postpones any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from the Debtor any amounts paid by the undersigned pursuant to this Guaranty until such time as Bank has been fully and irrevocably paid the entire Indebtedness and no such payment (or any part thereof) is subject to any actual or potential claim for recovery, return or disgorgement as a preference or otherwise; (ii) any notice of the Debtor incurring any of the Indebtedness; and (iii) presentment, demand, protest or notice of dishonor, non-payment or other default with respect to any of the Indebtedness or any collateral therefore. The undersigned hereby grants to Lender full power in its discretion and without notice to the undersigned to deal in any manner with the Indebtedness and any guarantor or any collateral, including but not limited to the following powers:

      A.    To change any terms of any of the Indebtedness, including the rate of interest and to grant any extension or renewal of the Indebtedness and any other indulgence with respect thereto and to effect any release, compromise or settlement of the Indebtedness;

      B.    To forebear or enter into any agreement to forebear from taking any action with respect to any of the Indebtedness or with respect to any guarantor or any collateral and to change the terms of any agreement to forebear;

      C.    To forebear for calling for additional collateral to secure any of the Indebtedness or any other obligation of the Debtor to Lender;

      D.    To consent to the substitution, exchange or release of any one of the undersigned (if more than one) and any other guarantors or all or any part of any collateral securing the Indebtedness whether or not any new collateral or guaranties, if any, received by Lender as a result of any such substitution, exchange or release, shall be of the same or of a different character or value than the collateral or guarantees surrendered by Lender;

      E.    If the Indebtedness is not paid when due, whether by default, demand or maturity or if there is a default in the performance of any obligation with respect to the collateral, to realize on all or part of the collateral as a whole or

in such parcels or subdivided interest as Lender may elect at any public or private sales for cash or on credit for future delivery without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the undersigned hereby waives any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise or to forebear from realizing thereon as Lender, in its discretion, deems proper and to purchase all or any part of any collateral for its own account at any such sale or foreclosure.

The obligations of the undersigned hereunder shall not be released, discharged or in any way affected nor shall the undersigned have any rights or recourse against Lender by reason of any action Lender may take or omit to take under the foregoing powers. The undersigned unconditionally and irrevocably waives each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledges that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the Indebtedness, and acknowledges that as of the date of this Guaranty no such defense or setoff exists.

The obligations of the undersigned hereunder shall not be released, discharged or in any way affected by reason of the fact that a valid lien on any of the collateral may not be conveyed to or created in favor of Lender; nor by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; nor by reason of the fact that any of the Indebtedness may be invalid or unenforceable for any reason; nor by reason of the fact that the value of any of the collateral or the financial condition of the Debtor, any obligor or any guarantor may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste or loss by fire, theft or otherwise of any collateral unless caused by the willful act or willful failure to act of Lender; nor by any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

The undersigned agrees that no security now or later held by Lender for the payment of any Indebtedness, whether from the Debtor, any guarantor, or otherwise, and whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and Lender, in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned acknowledges and agrees that Lender has no obligation to acquire or perfect any lien on or security interest in any assets, whether real or personal, to secure payment of the Indebtedness, and the undersigned is not relying upon any assets in which Lender has or may have a lien or security interest for payment of the Indebtedness.

No release or discharge of any one or more of the undersigned or modification of this Guaranty as to any of the undersigned (if there be more than one) shall release or discharge any other of the undersigned unless and until all of the Indebtedness shall have been fully paid.

4.    Payments on the Indebtedness.  All payments received from the Debtor or on account of the Indebtedness from any other source shall be taken and applied as payment in gross and this Guaranty shall apply to and secure any ultimate balance which shall remain owing to Lender. The Bank shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on the Indebtedness.

5.    Termination.  Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of Lender and receiving from an officer of Lender written acknowledgement of delivery; provided, however, the termination shall not be effective until the opening of business on the fifth (5th) day ("effective date") following written acknowledgement of delivery.  Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s).    Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of termination or any Indebtedness created after that pursuant to any commitment or agreement of Lender or pursuant to any credit facility provided to the Debtor by Lender existing at the effective date of termination (whether advances or readvances by Lender after the effective date of termination are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid.  The Bank has no duty to give notice of termination by any guarantor(s) to any remaining guarantor(s). The undersigned shall indemnify Lender against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by Lender in connection with any suit, claim or action against Lender arising out of any modification or termination of Debtor's credit facilities by Lender or any refusal by Lender to extend additional credit in connection with the termination of this Guaranty.

6.    Security.  The liability of the undersigned under this Guaranty is secured by all items now or hereafter deposited in any account of any of the undersigned with Lender and by all proceeds of such items (cash or otherwise); by all account balances of any of the undersigned now or hereafter with Lender; by all property of any of the undersigned now or hereafter in the possession of Lender; and by any other collateral, rights and properties described in each and every mortgage, security agreement, pledge, assignment and other security or collateral agreement which has been or will hereafter be executed by any of the undersigned to or for the benefit of Lender (all herein collectively called the "Guaranty Collateral").  Any Guaranty Collateral or the proceeds thereof may be applied to satisfy the liability of the undersigned under this Guaranty.

7.    Sale/Assignment.  The undersigned acknowledges that Lender has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Indebtedness and any related obligations, including, without limit, this Guaranty, without notice to the undersigned and that Lender may disclose any documents and information which Lender now has or later acquires relating to the undersigned or to the Borrower in connection with such sale, assignment, transfer, negotiation, or grant.  The undersigned agrees that Lender may provide information relating to this Guaranty or relating to the undersigned to Lender's parent, affiliates, subsidiaries and service providers.

8.  Other Guarantors. If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be joint and several as to all guarantors, whether the guarantees are executed together or separately, and may be enforced at the option of Lender against each or any number of guarantors. The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any guarantor, Lender may extend or renew any or all Indebtedness and may permit the Debtor to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantors. The undersigned acknowledges that the effectiveness of this Guaranty is not conditioned on any or all of the Indebtedness being guaranteed by anyone else.

9.  Reinstatement. Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated in the event that any payment received or credit given by Lender in respect of the Indebtedness is returned, disgorged or rescinded under any applicable state or federal law, including, without limitation, laws pertaining to fraudulent transfer, bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by Lender, and whether or not Lender relied upon this payment or credit or changed its position as a consequence of it. In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agrees upon demand by Lender, to execute and deliver to Lender those documents which Lender determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement or continuation. If the undersigned does not execute and deliver to Lender upon demand such documents, Lender and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned.

10.  Miscellaneous. All persons signing this Guaranty on behalf of a corporation, partnership, trust or other entity warrant to Lender that they are duly and properly authorized to execute this Guaranty. Nothing in this Guaranty shall waive or restrict any right of Lender granted in any other document or by law. No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver. No single or partial release by Lender of any right or remedy shall preclude any other future exercise of that right or remedy or the exercise of any other right or remedy. No waiver or indulgence by Lender of any default shall be effective unless in writing and signed by Lender. Nor shall a waiver on one occasion be construed as a bar to or waiver of that right on any future occasion. Any reference to Lender shall include any assignee or holder of all or any part of the Indebtedness. Each and every immediate and successive assignee, transferee or holder of all or any part of the Indebtedness shall have the right to enforce this Guaranty by suit or otherwise for the benefit of such assignee, transferee or holder as fully as if such assignee, transferee or holder were specifically named herein, provided that Lender shall have an unimpaired right to enforce this Guaranty for its benefit as to so much

of the Indebtedness as it has not assigned or transferred. This Guaranty shall bind the respective heirs, personal representatives, successors and assigns of the undersigned. The undersigned agrees that any action against them for enforcement of this Guaranty may be brought by Lender in any federal, municipal or state court in Michigan having jurisdiction of the subject matter; the undersigned consent to personal jurisdiction over them by such courts; and they consent to venue in such courts. This Guaranty was executed in Michigan and is governed by Michigan law. Any married woman executing this Guaranty acknowledges that she binds and intends to bind her individual estate hereby.

11.     JURY TRIAL WAIVER.     THE UNDERSIGNED AND BANK ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.

12.     Dollar Limitation. Notwithstanding any other terms hereof, the total obligation of the undersigned under this Guaranty shall not exceed $2,000,000 plus all costs and expenses (including, but not limited to, reasonable attorney fees) incurred by Lender in endeavoring to enforce this Guaranty or protect or realize upon any collateral for this Guaranty (including participating or taking action in any bankruptcy or other insolvency proceeding of the undersigned). Notwithstanding the foregoing, nothing contained herein shall be deemed to prejudice the rights of Lender to recover from the undersigned all losses, damages or costs (including, without limitation, attorneys' fees) incurred by Lender as a result of fraud or material misrepresentation by or on behalf of the undersigned.

13.     Financial Information. Within 120 days after each calendar year end, the undersigned shall provide to Lender the following documents certified by the undersigned to be true and correct (check if applicable):

        ☒  Current personal financial statement for the undersigned in form satisfactory to Lender.

        ☒  Federal income tax return for the undersigned for such calendar year.

This Guaranty amends and restates in its entirety the prior guaranties for the undersigned in favor of Lender.

*[signature page follows]*

6

Date of Signing: _____, 2012

Guarantor(s)

Carl Blauwkamp

Guarantor's Address:
13 Carousel Lane
Holland, MI 49423

GRDS01 452834v1

7

## AFFIRMATION OF AMENDED AND RESTATED GUARANTY
### (Carl Blauwkamp)

The undersigned hereby ratifies and confirms his Amended and Restated Guaranty dated as of June 18, 2012 (the "Guaranty"), executed and delivered to Fifth Third Bank (the "Bank"), pursuant to which it guaranteed all present and future indebtedness of LAMAR CONSTRUCTION COMPANY, a Michigan corporation (the "Borrower") in accordance with the terms contained in said Guaranty, and represents and warrants to the Bank that said Guaranty remains in full force and effect, is valid and binding in accordance with its terms, that it has no defenses to the enforceability thereof and that said Guaranty runs in favor of the Bank. The undersigned acknowledges the Borrower has obtained or will obtain an additional extension of credit from the Bank. The undersigned acknowledges and agrees that such additional extension of credit is included as part of the guaranteed Indebtedness (as defined in the Guaranty). The undersigned has obtained such information as it desires as to the affairs of the Borrower and understands that the Bank has no duty or obligation, now or in the future, to supply it with any information whatsoever concerning the Borrower. The undersigned furthermore understands and agrees that the giving of this affirmation at this time does not create an obligation on the Bank to obtain an affirmation in the future or effect the terms of the Guaranty as expressed therein, and that the failure of the Bank to obtain such an affirmation in the future shall not at any time affect the validity or scope of the Guaranty.

The undersigned has executed this Affirmation of Amended and Restated Guaranty as of _Dec. 3_____, 2012.

Individual Guarantor:

Carl Blauwkamp

GRDS01 460989v1

## AMENDMENT AND AFFIRMATION OF AMENDED AND RESTATED GUARANTY
### (Carl Blauwkamp)

The undersigned hereby ratifies and confirms his Amended and Restated Guaranty in favor of Fifth Third Bank (the "Bank"), dated as of June 18, 2012 (the "Guaranty), whereunder it guaranteed the indebtedness of Lamar Construction Company, a Michigan corporation (the "Borrower"), in accordance with the terms contained in said Guaranty, and represents and warrants to the Bank that said Guaranty remains in full force and effect, is valid and binding in accordance with its terms, that it has no defenses to the enforceability thereof and that said Guaranty runs in favor of the Bank. The undersigned has obtained such information as it desires as to the affairs of the Borrower and understands that the Bank has no duty or obligation, now or in the future, to supply it with any information whatsoever concerning the Borrower. The undersigned furthermore understands and agrees that the giving of this affirmation at this time does not create an obligation on the Bank to obtain an affirmation in the future of affect the terms of the Guaranty as expressed therein, and that the failure of the Bank to obtain such an affirmation in the future shall not at any time affect the validity of the Guaranty. The failure of the Bank to obtain an affirmation from any other guarantor of the Borrower shall not at any time affect the validity of the Guaranty.

The undersigned further agrees that the following Section 14 is hereby added to the Guaranty:

Keepwell. Each Qualified ECP Guarantor hereby jointly and severally absolutely, unconditionally and irrevocably undertakes to provide such funds or other support as may be needed from time to time by each other Borrower or Guarantor to honor all of its obligations under this Guarantee in respect of Swap Obligations (as defined in the Credit Agreement) (provided, however, that each Qualified ECP Guarantor shall only be liable under this section for the maximum amount of such liability that can be hereby incurred without rendering its obligations under this section or otherwise under this Guaranty voidable under applicable law relating to fraudulent conveyance or fraudulent transfer, and not for any greater amount). The obligations of each Qualified ECP Guarantor under this section shall remain in full force and effect until satisfaction or discharge of the Liabilities. Each Qualified ECP Guarantor intends that this section constitute, and this section shall be deemed to constitute, a "keepwell, support, or other agreement" for the benefit of each other Borrower or Guarantor for all purposes of Section 1a(18)(A)(v)(II) of the Commodity Exchange Act (as defined in the Credit Agreement). "Qualified ECP Guarantor" means, in respect of any Swap Obligation, each Guarantor that has total assets exceeding $10,000,000 at the time the relevant Guaranty or grant of the relevant security interest becomes or would become effective with respect to such Swap Obligation or such other person as constitutes an "eligible contract participant" under the Commodity Exchange Act or any regulations promulgated thereunder and can cause another person to qualify as an "eligible contract participant" at such time by entering into a keepwell under Section 1a(18)(A)(v)(II) of the Commodity Exchange Act.

Carl Blauwkamp

Accepted and agreed to this
10th day of October, 2013, by:

FIFTH THIRD BANK

By: _____
Scott Burke
Its:    Vice President

GRDS01 4823565v1